and we'll hear our first case United States versus Alicia Smith and turn quest numbers 22-2176 22-2178 and 22-2195 and you'll you may proceed whenever you like. Thank you. In determining whether to grant a motion for a reduction of sentence under the First Step Act, the law is clear that the record must demonstrate that the district court considered all of the 3553A factors including an FSA movance post-sentence rehabilitation evidence and arguments applying it. That demonstration requires some explanation of how the district court weighed both sides of the sentencing scale. This means the facts that the district court considered to weigh in favor of a reduction and the facts that it considered to mitigate against one. This is necessary so that the appellate court can review its ultimate decision for an abuse of discretion. Now there's no dispute here about the appellant's eligibility. The only question is whether the district court meaningfully considered the 3553A factors in denying their motions. Well when you look at what Judge Rubino wrote and you look at it and think about it broadly, why can't we say that that explanation for each of your clients is sufficient? Your Honor, for three reasons. The first and the biggest problem with the denial orders in this case is that they don't acknowledge or respond to any of the post-sentence rehabilitation evidence that was presented by each particular movant. And each of these movants centered their FSA motions on more than 13 years of post-sentence conduct and rehabilitation. So each of these movants presented particular arguments that were specific to their individual circumstances. So the reference in Judge Rubino's three orders to three separate appellants to their history, can we read that broadly to encompass the argument you're alluding to? I don't think so, Your Honor. So the history that the court alluded to in the denial orders, it relates to the original sentence that was imposed, the assessment of each defendant's history and characteristics at the time of the original sentencing. And so the denial orders don't acknowledge that there is new information about each of these appellants. And so because it doesn't acknowledge that new information, there's no way to determine from the order itself whether and how the district court applied that new information to its 3553A weighing analysis with respect to the FSA motion. So the problem with the orders is, first, the failure to acknowledge the post-sentence rehabilitation material. Second, the failure to identify how it weighs that material against the original assessment of the 3553A factors. So it seems to me, though, that you're imposing a fairly rigid test on what district courts must do. And the Supreme Court in Concepcion is really going a different way. It says the First Step Act leaves much to the judge's own professional judgment. And you're coming with a very rigid test, leaving not that much to a judge's professional judgment. I don't think so, Your Honor. I think that the tests are the same. Concepcion tells us that what is required is that the district court consider all of the 3553A factors, including a movement's pepper presentation. And the district judge said he did, right? So what the district judge said in these three denial orders was essentially the same in each one, that each movement relied on 3553A arguments in support of its motion for a sentence reduction. And then the order goes on to report the statutory and guideline ranges and each movement's role in the offense. But it doesn't acknowledge and respond to the supplements that were submitted by each movement and the arguments that were particular to each movement. But Concepcion also says that district courts don't have to make a point-by-point rebuttal of the party's arguments. That seems to be what you're asking. It seems to me that you're fighting against what the Supreme Court has said district courts don't need to do. And you're saying, yes, they do. I think you win if Concepcion doesn't say that. If Concepcion comes out and says, you need to have a point-by-point detailed explanation for every argument presented, you win. But Concepcion set a different standard, and it's a much, much, much lower standard, at least as I read it, and it's one that is hinged on discretion. And it seems to me that a little bit of what Concepcion's saying is when you show up with a conceptually difficult argument, you probably have to give a pretty good explanation, a lot of moving pieces, a lot of things like this. On the overall spectrum of difficulty of argument that's going to go into this whole 3553A factor analysis, rehabilitation isn't the hardest of those. Well, Your Honor, we agree that the test is unchanged. The standard is unchanged. But I think that the application of Concepcion here requires more than what we have in the orders. So if, for example, I agree that the sort of sliding scale that distinguishes conceptually simple cases from more complex ones is at work here. And so in Rita, the Supreme Court upheld a sentence that was imposed where the explanation was relatively brief. And it was based on that assessment of the simple, straightforward. So if you think that the district court's explanation falls below the standard, surely it didn't need to do too much more, since it's a low bar, to exceed the standard. It's an awkward question at one level, but is there something that you can readily identify that if the district court would have done this, then you wouldn't be here today, at least on this argument? Well, Your Honor, I don't know what the floor would be, but the case law provides us a lot of examples of the many ways that a district court can demonstrate that it's meaningfully considered the 3553A factors. So in Rita, what the district court did was, at a hearing, engage with the parties about the arguments. It asked follow-up questions about each factor. The district court summarized the parties' arguments and verified that the summary was correct before imposing sentences. But that may be best practices. That may not be the floor. And when we evaluate things, we have to be careful that we don't raise the floor to best practices. This case is a case much more about the floor than it is about best practices, I think. I agree, Your Honor. And short of that, the Supreme Court in Concepcion also identified other examples of district courts successfully demonstrating that it had considered the factors. But I thought that you'd argue that Concepcion said that the court must, right, it wasn't may, it was must, consider all non-frivolous arguments, and that there's no way to tell whether a district court has addressed a non-frivolous argument unless they say so. We agree, Your Honor, 100%. And I think that that goes to the sort of second half of the court's obligation to demonstrate that it's considered the 3553A factors, is it has to explain its reasoning. Otherwise, this court doesn't have what it needs in order to evaluate whether that weighing was reasonable. In a manner that would respond to Judge Phipps' question, what is it in any of the orders that lets the reader, any reader, know that each of the arguments made, because some of the arguments overlap among the three, but not all of them, so what is it in any of the arguments raised have been addressed? So I don't believe we have that in these orders, and that is... What specifically so that we can sort of understand the depth of the omission? So I think the biggest glaring omission of these orders is it does not acknowledge the new information that mitigates in favor of a sentence reduction. It is therefore impossible to discern from the orders whether and to what extent the court considered the post-sentence rehabilitation on balance against its original assessment of the movement's history and characteristics when assessing the 3553A factors. Are you suggesting the court missed it? Because I mean, it was well briefed. It's all over. The parties, you know, went at each other as you should. Surely it was before the court. Certainly not, Your Honor. And we definitely don't mean to suggest that the court, the district court didn't read the Pepper evidence, but the problem is that the denial orders don't demonstrate that it considered the Pepper evidence or how it considered it. That's quite an ask to take an act and now say that the act requires demonstration. We get a lot of times where we review district court orders for an abuse of discretion without any explanation. Let's just say in a civil context that a district court says, we'll allow 18 months of discovery and a party says, this is the most simple case ever. We'd only like four, right? That may be an abuse of discretion, but we can review that on abuse of discretion if it's a final interlocutory order, which might be its own thing. But we don't need any explanation. We can say we've got the info we need. We think that 18 months was too long. That's an abuse of discretion. So now I think that district judges can help themselves on appellate review by providing an explanation to make it more clear why they didn't abuse their discretion. But the notion that we can only evaluate abuse of discretion upon information that the district court puts into the record, that's really injecting almost a canary standard from administrative law into criminal law. And what's the support for that other than it would be best practices, it would be helpful, it would be nice? Well, Your Honor, I disagree. And I think that this goes beyond being best practices or being helpful to the Court of Appeals. So first of all, we have a mandate, a requirement from the Supreme Court in Concepcion that requires district courts to demonstrate that it meaningfully considered the 3553A factors and the specification that that includes PEPR evidence, the post-sentence rehabilitation material. So this court held in Tomko that because of the broad discretion that is afforded to district courts in matters of substantive reasonableness, we have to insist on a strict procedural requirement wherein the district court demonstrates its thinking in order to facilitate appellate review. Otherwise, there's nothing for the appellate court to look to when conducting its task of discerning reasonableness. I see my time is up, Your Honor. Thank you. We'll hear you on rebuttal. Thank you. Take your time. Thank you. You may begin. Thank you. Good morning, your honors. May it please the court, Elizabeth Ray on behalf of the government. The district court here did not commit procedural error in denying the appellant's section 404 motions. In order to apply the correct analytical framework to the district court's orders here, we first need to consider what the Supreme Court has articulated as the appropriate standard. The Supreme Court has repeatedly considered the issue of how much district courts have to say when imposing a sentence. Can we start with, we read Concepcion, and they talk about dismissing non-frivolous arguments. Can we agree that this is a non-frivolous argument here? Yes, your honor. The government agrees that it's non-frivolous and factually supported. Great. Well, if it's non-frivolous, then help me. Because each of the three orders is brief, depending on the reader's predilection, might say perfunctory. And everyone would agree, I think, it's certainly not detailed. So if we start there and we think of Concepcion and then followed by our own Shields, the question I have is, well, I'm sorry. I'm going to add one more fact. The appellants have three different set of facts. We agree that they're not all identical, right? The orders appear almost identical. And I'm trying to figure out, like, if the district court is giving due consideration to all the arguments of each of the appellants, how do the orders look almost identical? And isn't that ab initio enough for us to say, well, maybe there should be a greater degree of explanation with regard to the individual arguments made by each of the appellants? Respectfully, a lot to unpack there. So. Yeah, there is. So take your time. A lot of points to respond to there, your honor. So initially, I think it's important to keep in mind what Rita says. And I'm going to quote language from Rita. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends on circumstances. And the law leaves much to the judge's own professional judgment. And that's from jump site 2468 of the Rita decision. And then pivoting to your honor's specific question about the three orders at issue here, I think what we have is an example of what the Supreme Court called a conceptually simple case. While your honor is perfectly correct that the three individual defendants have individual circumstances. Mr. Smith included a letter from his son saying what a wonderful father Mr. Smith had been despite being imprisoned. Mr. Alessia included other information about post-rehabilitative efforts while in prison. I think he mentioned classes that he had taken. Mr. Turnquist talked about he's now out following the CARES Act, but he talked about his job at a moving company and his work with an anti-violence network. So clearly, each defendant has specific individual facts that distinguishes him. But conceptually, if you can think of conceptually at the broadest level, we have three defendants who we agree there's no dispute that they qualify for consideration under the First Step Act. So on one point, it knocks down their statutory mins and maxes. And then the other major factor that we focus conceptually is the post-sentencing rehabilitative factors. So if you drill down to each individual defendant, yes, you're going to have specific details person by person. But what the Supreme Court said was conceptual simplicity. And here, conceptually, if you look across the three defendants, what you have is, again, individuals who qualify for consideration on the First Step Act. But then the main thrust of their argument is post-sentencing rehabilitative evidence. What language in any of the three orders would tell an objective reader that the court has considered? There are other issues that need to be considered, but just on the ones you've just mentioned, the court has considered the post-rehabilitation. It was Judge Rubino's specific reference to this court's decisions in Easter and Murphy, where he includes parentheticals noting that the Easter and Murphy decisions affirmatively obligate him to consider post-sentencing developments, including post-sentencing rehabilitative efforts. So we know from Judge Rubino's inclusion of the Murphy. General, though, isn't it? Well, we know, circling back to the Supreme Court line of cases, starting with Rita, moving on to Chavez Meza, and then Concepcion, while the district court has to show that he has considered factually supported non-frivolous arguments, he doesn't have to write about them in detail. And we know that from Concepcion that you don't have to have a specific point-by-point rebuttal. And the government. If I could follow up on one of Judge Greenaway's questions, there is this notion in the case law that the judges get to exercise their professional judgment in doing this, but the word that he didn't use that comes to mind for me is boilerplate. And so to the extent that these orders feel a little boilerplate, that's hard to reconcile with professional judgment. Because when you sit there and say, this reflects professional judgment, yet I'm kind of just doing the same, very, very, very close to the same thing many times, that's intention, right? Respectfully, I would disagree about the intention that you can lead into what Your Honor has characterized as boilerplate. And I would respond specifically to your question by referring to the Chavez-Mesa decision, where the Supreme Court evaluated a district court opinion that had been entered on an administrative form. And now the government acknowledges that Chavez-Mesa involved a sentence reduction under a guidelines amendment. But Justice Breyer observed that even if you apply the same rigorous standard of an original underlying imposition of a sentence, and don't consider that it's the fact that it was a guideline sentence reduction as determinative, and use the original sentencing standard, which Breyer said he was going to apply. Even in Chavez-Mesa, the Supreme Court said that if you're filling out a form, again, where you have a conceptually simple case, and depending on the facts that are at issue, even filling out a form can meet procedural muster. And then we move on in 2022 to Concepcion, where the Supreme Court says that you don't have to have a point-by-point rebuttal. So with that as the framework, when we pivot to look at the specific orders at issue here, we can see, obviously, there's no statement that the government can point to where the district court says, I have duly considered the individual specific post-sentencing rehabilitative arguments that each individual defendant has made, relying on letters from family, jobs outside, courses inside. Of course, it doesn't get to that level of detail. Let's stop for just a moment. I'm going to interrupt you, and I do beg your pardon. If that sentence that you've just read into the record was in the opinion, would they have anything to say? No, because it would be a better or a best practice, as Judge Phipps characterized it during my colleague's opening argument. However, respectfully, that's not what the law requires. The law doesn't require the district court to make that detailed recitation of that. That sentence isn't required to be there. The law does not require it. One to discern that all non-frivolous arguments are addressed as Concepcion and Shields requires. Well, here in this- Without that sentence. You didn't burden yourself particularly much when you repeated that sentence. And I think we probably all agree in the room that had that sentence been in there, it'd be a very difficult argument for appellants to make. So it's not as though there's a burden that is placed, but there is a requirement. And the requirement appears to be you have to address non-frivolous arguments. I mean, we do agree on that, right? Respectfully, Your Honor, I'm going to slightly disagree with you. I would argue that the law requires that the district courts consider each argument, consider and acknowledge, which Judge Rubino did here. Well, I'm going to beg your pardon again, because this is what Concepcion says. Concepcion says because district courts are always obligated to consider non-frivolous arguments presented by the parties. And if the district court doesn't say it, how are we to know that they have met their obligation, that's what Concepcion says, to consider non-frivolous arguments? Yes, to consider, but not necessarily to write about in detail. And here, because Judge Rubino cited to Easter and Murphy, which expressly required. It's an excellent opinion. I'm aware that Your Honor wrote the majority opinion in Easter. So we know because Judge Rubino cited to Easter and Murphy, and included parentheticals that say that he recognized that those two decisions required him, obligated him, to consider the post-sentencing rehabilitative arguments. We know that he considered them because he acknowledged that he had to consider them in citing Easter and Murphy. Maybe we can approach this in a slightly different way. We're obviously a reviewing court. How do we review what happened? How do we, with no explanation at all? I would respectfully disagree that there was no explanation at all. So again, pivoting to Chavez Meza, where we know that you can fill out a form. It's hypothetical. He gave us something, but maybe not enough. I don't know. Maybe it is enough. Well, again, we know here that the district court ran through, if you look at his orders as a whole, and look at what he talked about in terms of the specific characteristics of each defendant, the quantities of crack that were involved, which we know from U.S. versus Jackson, this court requires, expects, quote unquote, expects a district court to consider. And then what he said, what Judge Rubrino said, again, to inciting Easter and Murphy, he acknowledged that he had in his mind that he needed to consider post-sentencing rehabilitative efforts. The fact that he did- Is there enough here for us to execute our duties as a reviewing court? Respectfully, yes, under the law, given what Rita Chavez Meza and Concepcion have said, because Judge Rubrino was not obligated to write specifically point-by-point rebuttals of each point. And just while we're on the point of opinions that Judge Greenaway is the principal author of, it reminds me that he was, it reminds me that he was the author, I believe, of the dissent in Flores-Meja. And, but so, which brings me to, that case, the court did remand to the district court because there was an insufficient explanation. But consider the facts of Flores-Meja. In that case, the defendant had argued for a downward variance based on cooperation. And the district court said, okay, thanks, anything else? And in that instance, the Third Circuit said that that was a close issue. So if, okay, thanks, anything else, presents a close issue, what Judge Rubrino did here isn't even close to a close issue, respectfully. Yeah, the problem breaking up a case that somebody wrote is that they're on top of the facts. Now, in Flores-Meja, which was an en banc, the issue was the point had been brought up before. And there had been some consideration of it. And then at the end of the sentencing, there was a rather brusque and quick, is there anything else? And the rule that came out of that is the only way that the district court would know that it had to spend time in explanation because it was an issue that had already been raised is if the defense counsel raised it again at that point. And that's what the key ruling at that time was, which I didn't agree with. I'm not sure it's particularly helpful here because of the distinction and the sort of factual predicate. Well, I think it's helpful in two aspects. As to the factual predicate, it's interesting the point that Your Honor raises. If you consider Defendant Turnquist, one of Mr. Turnquist's points in advocating for a sentence reduction was he wanted credit for the additional time that he ended up serving in Maryland after the initial sentencing. And recall that in these specific facts, Judge Rubino had already considered and rejected a prior request. So as to Mr. Turnquist, at least, we have a very specific instance where a very specific issue that he had raised and was relying significantly on, recall that in Mr. Turnquist's motion, he included the entire transcript of his sentencing and he hammered on the Maryland point. Was that frivolous? Sorry? Was that frivolous then? No, it wasn't frivolous, but it was something that, I mean, it was factually supported. He included the sentencing transcript showing, look, Judge Rubino had already considered this at my original sentencing and given me a 24-month credit. Therefore, since there was this weird computational issue in Maryland where I had to serve additional time, I'd like additional credit. But to Judge Greenaway's point that an issue had already been considered and then circled back to, specifically in Mr. Turnquist's facts, if you look at docket 9-12 and 9-13, Mr. Turnquist had already made a specific request for additional consideration for the additional time that he ended up serving in Maryland and Judge Rubino had already rejected that request once. So it's unsurprising and feeds in again to the conceptual simplicity of, at least specifically as to Mr. Turnquist, for him to ask again in his first step back motion for consideration of the Maryland time. That specifically is an example of a fact that had already come up once, broadly speaking, to use your honor's term. The Maryland time issue had already come up once and I am a red light and I have run out of time. Go ahead, go ahead. Go ahead, finish your point because I've got something. Okay. And again, and then the other point I wanted to make about Flores-Méa is the timing of the decision since it had been issued in 2014. And again, after that, we have the benefit of Chavez-Méa in 2018 in Concepcion where again, and I'm gonna hit this like a sledgehammer, I'm like a broken record. The Supreme Court does not require district courts to write at length or even necessarily at all on a point-by-point specific rebuttal of particular points. So that's what I was gonna say in response to the Flores-Méa issue, but your honor had an additional question for me. Yeah, but you raised the Flores-Méa issue, so. But anyway, the only thing, I take your point on turnquest because I presume your point is there is a specific reference, but that kind of actually operates against you because in that particular instance, there was a reference by Judge Robredo. So we as a reviewing court can say, oh, he did acknowledge that that had been an argument raised and he did address it. I think we probably understand where each other is. Oh, but just very briefly, if I can ask the court's indulgence for like another 30 seconds. There are other instances in Robredo's orders where he specifically refers to fact-specific points about each of the defendants. He notes that Mr. Smith was the leader of the organization. He specifically calls out Mr. Alicia's 59,100 grams of crack. He talks about Mr. Turnquist's prior request for the Maryland time. So in addition to the fact that he cites to Easter and Murphy he also does affirmatively say specific things about each specific defendant. So, and we know since he was, A, a senior district judge and he's also the judge who presided over the trial in the original sentencing, he's familiar with the record. He's familiar with the three defendants. And given the conceptual simple nature of the case, this isn't a situation that requires robust, you know, authorship in terms of adding detail to each individual order. And I thank the court for letting me go over time. Judge Greene, we've got enough. And there's more. Well, so I'm trying to think, okay, you want us to affirm these orders are okay. And we're not to place an obligation on district courts. What, where would you draw the line in trying to reconcile all of this with Concepcion, Easter, Shields? Could he just say, I've considered the 3553A factors. I'm familiar with the history of this particular defendant, motion denied. Is that enough? If we look at. This is the court of appeals. We have to kind of think of where we're gonna draw lines. How should we think about that? Because if, play along with me just for a moment. I mean, if I'll refer to it as myself as perfunctory, others might not agree. If a perfunctory order is sufficient, right, then how little would be okay? Is it, as I suggest, I've considered all of the arguments and motion denied, is that enough? Because I think that's the logical conclusion that one would draw based on how you've been discussing what the obligation is on the district court. I'm gonna answer, not on behalf of myself, or on behalf of the government. I'm gonna answer on behalf of the Supreme Court where they talk in Chavez-Meja again. I'm gonna return to that case. Respectfully, Your Honor, we know from Chavez-Meja that even filling out a pre-printed form is sufficient. And we know that Justice Breyer said, I'm going to assume for the sake of argument that we need to here apply the same standard for procedural sufficiency that exists at an original imposition of a sentence. He did not distinguish and say, well, since this is a guideline sentence modification, we're gonna have a lower standard. He actually rejected the government's argument on that point and said, we need not go that far. In Chavez-Meja, Justice Breyer said, look, I'm going to apply the same rigorous standard that's applied at an original imposition of a sentence. And even with that as the context, and Chavez-Meja referring back to key points in Rita, the court in Chavez-Meja found that, again, given the totality of the circumstances, when you look at the facts of the case, and if it's conceptually simple, even filling out a form can be sufficient. So respectfully, Your Honor, I would say yes, in some circumstances where the circumstances would allow, yes, saying granted or denied, given the surrounding milieu of the facts, it could be sufficient. Thank you. Thank you, counsel. Thank you. And we'll hear rebuttal. Take your time. Thank you for the court's indulgence. I appreciate it. Oh, take your time. So, very briefly, I just have a couple points in response to the government's argument here. So, first, I think the government's assessment of the floor is a good model for talking about these orders, because the orders that we have here don't give this reviewing court enough to determine whether and to what extent certain 3553A factors were considered. And the way that we can know that is that there are two equally plausible possibilities. So, based on the orders, it could be that the district court started with an individualized assessment of each movement's pepper evidence 3553A factors. Or it could have been that the district court had a rule of thumb, that minor role participants in the conspiracy who have good pepper evidence might be entitled to a reduction, but organizers or suppliers don't, no matter what they present. So, that latter possibility would be plainly improper under Concepcion, under Pepper, under this court's longstanding jurisprudence requiring individualized sentencing, right? So, excuse me. What we come back to is whether the orders, as written, provide the reviewing court enough information to discern what was its analysis with respect to 3553A. It sounds to me that the point that you're raising is if you were to articulate a standard, the standard would be the district court has to provide sufficient explanation to rule out that it did not rely on an impermissible rationale for its outcome. It might not have to point by point explain why it has a permissible outcome, but it would have to give an explanation to show, look, there might be improper reasons to deny this motion. I have to explain why I'm not doing the improper. Is that what you think the standard is? I don't even know that the district court needs to do that much. Whatever it does, whatever it says, it needs to provide sufficient information for this court to assess its reasoning. So, let me just tease it. If there is a really, really conceptually simple argument, not frivolous, but I don't know if the most conceptually simple argument is, your point would be that would still require an individualized assessment and statements analysis, at least to some degree, by a district court. I do, Your Honor. And I think that that's apparent from longstanding jurisprudence calling for individualized sentencing. And additionally, this court's decision in Tomko clearly identifying the role of the district court with respect to the role of the appellate court and its reviewing obligations. If this court doesn't have material in front of it to assess, it can't review for abuse of discretion. So, finally, I just want to agree with the court that this is a relatively low bar. There are no magic words. There is no threshold that we're asking the court to set that hasn't already been set. It may be a simple statement. It doesn't need to be a full opinion, but the orders that we have here just fall far short of even that. Is it enough, as the government seemed to suggest, that citing Easter and Murphy, the standards there, is that enough to put us over the top? No, I disagree, Your Honor. I think that there's clear case law on that. In Easter, the court stressed that a general statement that the district court had considered the 3553A factors is insufficient. And the court has also said that a rote recitation of the 3553A factors is going to be insufficient. The district court needs to demonstrate that it considered the 3553A factors and provide this court with a meaningful enough explanation to discern that that was correct, that it was reasonable, the weighing. I see that I'm out of time. If there are no further questions. Thank you, counsel. Thank you, Your Honor. We'll take the case under advisement. We'll thank counsel for their excellent arguments, both written and oral. And we'd like to greet counsel if you're amenable to that. We'll come down to you.